UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                           :

In re PetroChina Company Ltd. Securities    :    Master File No.: 1:13-cv-6180 (ER)
Litigation                            :

                           :    <u>CLASS ACTION</u>

                           :
                           :
                           :
                           :
                           :
                           :
                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
This Document Relates to:  ALL ACTIONS


**MEMORANDUM OF LAW IN SUPPORT OF PETROCHINA COMPANY LIMITED'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**


SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorneys for Defendant*
*PetroChina Company Limited*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ...............................................................................................................3

ARGUMENT .....................................................................................................................6

    I.       PLAINTIFFS' SECTION 10(B) CLAIM MUST BE DISMISSED ......................7

          A.     The SAC Does Not Plead Scienter .........................................................8

              1.     Plaintiffs Fail To Plead Facts That Show Defendants Acted with Conscious Misbehavior or Recklessness ................................8

              2.     The SAC Does Not Plead Corporate Scienter .............................12

          B.     The SAC Does Not Plead a False Statement or Actionable Omission ......14

              1.     Plaintiffs Fail To Allege That Any of PetroChina's Class Period Statements Were False Or Misleading When Made ..........15

                    a.     The SAC Does Not Allege Facts Showing that the SOX Certification Was False or Misleading ...................15

                    b.     The SAC Does Not Allege Facts Showing That PetroChina's Financial Statements Were False or Misleading or that PetroChina Lacked Adequate Internal and Financial Controls ..........................................17

                    c.     The SAC Does Not Allege Facts Showing That Defendants Misrepresented Compliance with Laws and Regulations, Corporate Governance Directives, and PetroChina's Code Of Ethics .....................................18

              2.     Plaintiffs Have Not Pleaded an Actionable Misrepresentation or Omission of Material Fact .........................................................22

          C.     The SAC's Allegations of Loss Causation Are Flawed ...........................24

CONCLUSION ................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*60223 Trust v. Goldman, Sachs & Co.*,
540 F. Supp. 2d 449 (S.D.N.Y. 2007) .................................................................. 25

*Acito v. Imcera Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) ....................................................................... 23, 24, 25

*Acticon AG v. China North East Petroleum Holdings, Ltd.*,
692 F.3d 34 (2d Cir. 2012) ....................................................................................... 25

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
505 F. Supp. 2d 662 (D. Colo. 2007) ............................................................... 16, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 18

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ......................................................................................... 7

*Ballan v. Wilfred Am. Educ. Corp.*,
720 F. Supp. 241 (E.D.N.Y. 1989) ........................................................................ 24

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .................................................................................................. 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 6

*Boca Raton Firefighters and Police Pension Fund v. Bahash*,
506 F. App'x 32 (2d Cir. 2012) ......................................................................... 14, 22

*Burritt v. NutraCea*,
2010 WL 668806 (D. Ariz. Feb. 25, 2010) ............................................................ 11

*Capital Mgmt. Select Fund Ltd. v. Bennett*,
680 F.3d 214 (2d Cir. 2012) ................................................................................. 8, 20

*Chill v. Gen. Elec. Co.*,
101 F.3d 263 (2d Cir. 1996) ....................................................................................... 9

*City of Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.*,
2005 WL 2278123 (S.D. Ind. Sept. 14, 2005) ...................................................... 11

*City of Brockton Ret. Sys. v. Avon Products, Inc.*,
    2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014)........................................................10, 20, 21

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008)................................................................11

*City of Roseville Emps.' Ret. Sys. v. Horizon Line, Inc.*,
    686 F. Supp. 2d 404 (D. Del. 2009)................................................................21

*Decker v. Massey-Ferguson, Ltd.*,
    681 F.2d 111 (2d Cir. 1982)................................................................18

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978)................................................................23

*Desai v. Gen. Growth Props., Inc.*,
    654 F. Supp. 2d 836 (N.D. Ill. 2009)................................................................16, 21

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................8, 21

*First Virginia Bankshares v. Benson*,
    559 F.2d 1307 (5th Cir. 1977)................................................................22

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*,
    615 F. Supp. 2d 218 (S.D.N.Y. 2009)................................................................25

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 665 (2d Cir. 2009)......................7

*Gavish v. Revlon, Inc.*,
    2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)................................................................17

*George v China Auto. Sys., Inc.*,
    2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012)................................................................3

*Glazer Capital Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008)................................................................10

*Glazer v. Formica Corp.*,
    964 F.2d 149 (2d Cir. 1992)................................................................22, 23

*Hutchison v. Deutsche Bank Sec. Inc.*,
    647 F.3d 479 (2d Cir. 2011)................................................................3

*In re Allied Capital Corp. Sec. Litig.*,
    2003 WL 1964184 (S.D.N.Y. Apr. 25, 2003)................................................................15

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)..........................................................23, 24

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013)..................................................................15

*In re Bausch & Lomb, Inc. Sec. Litig.*,
    592 F. Supp. 2d 323 (W.D.N.Y. 2008)................................................................11

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    2012 WL 6136746 (C.D. Cal. Dec. 7, 2012).......................................................13

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008)......................................................17, 23, 24

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...........................................................15, 18

*In re IBM Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998).................................................................................20

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)..................................................................24

*In re JPMorgan Chase & Co. Sec. Litig.*,
    MDL No. 1783, 2007 WL 4531794 (N.D. Ill. Dec. 18, 2007) .............................13

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)....................................................................7

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    —— F. Supp. 2d ——, 2014 WL 2840152 (S.D.N.Y. June 23, 2014)....................11

*In re Manulife Fin. Corp. Sec. Litig.*,
    2012 WL 4108104 (S.D.N.Y. Sept. 19, 2012)......................................................25

*In re MSC Indus. Direct Co., Inc.*,
    283 F. Supp. 2d 838 (E.D.N.Y. 2003) .................................................................17

*In re Omnicom Grp., Inc. Sec. Litig.*,
    597 F.3d 501 (2d Cir. 2010).................................................................................24

*In re Optionable Sec. Litig.*,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008)..................................................................10

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)..................................................................12

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), aff'd sub nom. *City of Pontiac
   Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014)........................20

*Janbay v. Canadian Solar, Inc.*,
   2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ......................................................18

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007)...............................................................................25

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005).................................................................7, 24, 25

*Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
   2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)..................................................16

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).............................................................................9, 10

*Panter v. Marshall Field & Co.*,
   646 F.2d 271 (7th Cir. 1981) ............................................................................16

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco Inc.*,
   2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011) ..............................................3, 11

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
   Commerce*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010).............................................................8, 10

*Police & Fire Ret. Sys. v. Safenet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009)...................................................................9

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
   75 F.3d 801 (2d Cir. 1996).....................................................................14, 15, 23

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)..............................................................................................7

*Tabak v. Canadian Solar Inc.*,
   549 F. App'x 24 (2d Cir. 2013) .........................................................................11

*Teamsters Allied Benefit Funds v. McGraw*,
   2010 WL 882883 (S.D.N.Y. Mar. 11, 2010) .......................................................9

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008).......................................................................8, 12, 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...................................................................................7, 8, 9, 10

**STATUTES AND REGULATIONS**

15 U.S.C. § 78u-4(b)..........................................................................7, 8, 14, 22, 24

17 C.F.R. § 240.10b-5................................................................................6, 7, 22

Sarbanes-Oxley Act of 2002 ("SOX")................................................................. *passim*

**RULES**

Fed. R. Civ. P.

    9(b)....................................................................................................... *passim*

    12(b)(6) ................................................................................................1, 6

Defendant PetroChina Company Limited ("PetroChina" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Class Action Complaint (the "SAC") filed by Lead Plaintiffs Jeffrey Klein and Samuel Ayoub ("Plaintiffs"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) (the "PSLRA").[1]

## PRELIMINARY STATEMENT

This lawsuit was filed following news reports of an alleged, widespread "corruption investigation" by the People's Republic of China ("PRC") into a large number of persons and entities, including certain PetroChina employees, two suppliers of PetroChina, and certain PRC political figures. Plaintiffs' bare-bones complaint *assumes* such an investigation means PetroChina defrauded investors by making statements concealing "bribery, political corruption, and undisclosed related party transactions." SAC ¶ 23. Plaintiffs seek to plead a claim that the alleged, unspecified corruption rendered three categories of statements false and misleading: (1) PetroChina's code of ethics as published on its website, (2) PetroChina's financial statements, and (3) one defendant's certification under the Sarbanes-Oxley Act of 2002 ("SOX").

In response to PetroChina's motion to dismiss the prior complaint in this action, which demonstrated that Plaintiffs had failed to allege any facts as to the nature of the purported corruption at PetroChina, Plaintiffs requested leave to amend their complaint to "address the purported deficiencies under Fed. R. Civ. P. 9(b) identified by [PetroChina] in its motion to dismiss." But the SAC adds virtually no specificity. In fact, Plaintiffs added to the SAC only *one* allegation related to the purported corruption – that unidentified individuals at PetroChina

---

[1] The SAC names three individual defendants, Jiang Jiemin ("Jiang"), Li Hualin ("Li"), and Ran Xinquan ("Ran") (together, the "Individual Defendants"), but Plaintiffs have not served them. Accordingly, while the arguments in this motion are largely applicable to the Individual Defendants, this motion is not made on their behalf at this time.

engaged in a single act of bribery at an unidentified time. But complaining of "bribery" without identifying who was involved, who was bribed, or describing any actual conduct that would permit the Court to infer that this solitary act had any effect on PetroChina or the Defendants' class-period statements is the epitome of conclusory allegations of wrongdoing.

Thus, even after allowing Plaintiffs this *third* opportunity to plead their claims, the Complaint never offers the Court even the most basic facts: *who* at PetroChina engaged in wrongdoing, *what* those individuals did that was wrong, *when* they did it, *who* among senior management at PetroChina knew about the wrongdoing, *when* they learned, or *how* they learned. In addition, Plaintiffs make no allegation that the alleged corruption had any effect on PetroChina's business or its financial statements. Because the Complaint contains no such facts, particularized or otherwise, there is nothing from which the Court can draw any inference of fraud – let alone the *strong* inference required by the PSLRA and Rule 9(b). Thus, the Complaint must be dismissed. The Complaint fails to state a claim for the following reasons:

- **First**, Plaintiffs fail to plead facts raising a strong inference of scienter. The SAC makes no showing that any Defendant had a motive to commit fraud, or acted knowingly or recklessly. Plaintiffs simply assert in conclusory fashion that Defendants had access to information contradicting their class period statements *or must have known* about the alleged fraud based on investigations announced after the fact. Such boilerplate allegations have been uniformly held to be inadequate to plead scienter. The single act of bribery vaguely alleged in the SAC does not change this conclusion because Plaintiffs have pled no facts from which the Court can infer that any Defendant was aware of the purported bribery.

- **Second**, Plaintiffs fail to plead an actionable misstatement or omission. The SAC's sparse factual allegations do not show Defendants misrepresented compliance with corporate governance directives or the code of ethics, nor do they identify *any specific item* of PetroChina's financial statements that is inaccurate or false. Simply put, Plaintiffs have pled no connection at all between any of the corruption alleged in the complaint and the Defendants' class-period statements. Plaintiffs also do not plead an actionable omission because the Complaint does not show that Defendants had any duty to disclose uncharged, unadjudicated, and unspecified wrongdoing.

- **Third**, Plaintiffs fail to plead loss causation. The two purported corrective disclosures alleged within the class period occurred after PetroChina's ADS price had already

suffered most of its class period decline, negating an inference that Plaintiffs' alleged loss was caused by fraud. Moreover, Plaintiffs make no effort whatsoever to apportion the effect of genuinely new information on the price of PetroChina's ADS.

**BACKGROUND**

**PetroChina's Disclosures:** PetroChina, China's largest oil and gas producer and distributor, is a joint stock company organized under PRC law and majority-owned by China National Petroleum Corporation ("CNPC"). SAC ¶ 2. Its American Depositary Shares ("ADS") trade on the New York Stock Exchange ("NYSE"). *Id*. As required by NYSE rules, PetroChina in 2004 adopted a code of business conduct and ethics for senior management (the "Code of Ethics"), which it posted on its website. *See* SAC ¶ 50.[2] The Complaint quotes at length from PetroChina's 2011 Annual Report on Form 20-F ("2011 20-F"), filed with the SEC on April 26, 2012 and signed by Defendant Li, as Secretary to PetroChina's Board of Directors. SAC ¶ 47; Ex. B at 104. The 2011 20-F generally referenced "a Code of Ethics that applies to our Chief Executive Officer, Chief Financial Officer, Chief Accounting Officer, other executives and senior officers and a separate Code of Ethics that applies to all of our employees." Ex. B at 98. It also included a standard SOX certification (the "Certification") signed by Defendant Jiang, certifying that, based on his knowledge, the 2011 20-F did not contain material misrepresentations and fairly presented the Company's financial statements, and that:

> The Company's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Company's auditors and the audit committee of the Company's board of directors . . .
>
> (a) All significant deficiencies and material weaknesses in the design or operation

---

[2] *See also* Ex. A (PetroChina's 2012 20-F) at 98 & 101. Exhibit references refer to the Declaration of Tom A. Paskowitz. On a motion to dismiss, "the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiffs' possession or the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco Inc.,* 2011 WL 1198712, at *2 (S.D.N.Y. Mar. 30, 2011); *see also Hutchison v. Deutsche Bank Sec. Inc.,* 647 F.3d 479, 481 (2d Cir. 2011) (SEC filings); *George v China Auto. Sys., Inc.,* 2012 WL 3205062, at *11 n.4 (S.D.N.Y. Aug. 8, 2012) (historical stock prices). PetroChina's full Code of Ethics is available at: http://www.petrochina.com.cn/ptr/gszljg/201404/5c428c2ae85a41d5b0cab72a2c720e29.shtml

3

of internal control over financial reporting which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal control over financial reporting.

SAC ¶ 54; Ex. B at Exhibit 12.1.  The Company made similar disclosures in its 2012 Annual Report on Form 20-F ("2012 20-F" (together with the 2011 20-F, the "20-Fs")), filed with the SEC on April 26, 2013, and again signed by Li.  SAC ¶ 55; Ex. A at 98, 105 & Exhibit 12.1.

Plaintiffs allege that the Annual Reports and the SOX Certification accompanying PetroChina's 2011 20-F were false and misleading because PetroChina's senior officials were not in compliance with PetroChina's corporate governance directives and the Code of Ethics and were aware of unspecified "fraud" and "internal control weaknesses" at the Company, allegedly exposing the Company to risk of investigation and disciplinary action by various governmental and regulatory authorities.  SAC ¶¶ 5, 56.

**The Alleged Corruption:**  In the SAC, Plaintiffs have added a solitary allegation regarding the purported corruption at PetroChina:  that unidentified individuals "bribed a related company $800 million" in connection with a bidding program at an Indonesian oilfield "in order [to] grow PetroChina's business in the region."  SAC ¶ 24.  Other than this unsubstantiated and exceedingly vague allegation based on an unidentified news article, Plaintiffs still fail to specify in any way the alleged misconduct giving rise to the investigations, but instead continue to offer the same vague allegations, assumptions, and guilt-by-association innuendo based on unspecified media reports as in the prior complaint.  For instance, Plaintiffs continue to allege that:

- The PRC arrested and seized assets from Zhou Yongkang, a former officer at PetroChina's parent, a decade before the class period, in an "investigation of corruption, bribes, and illegal related party transactions."  The SAC also vaguely references charges and convictions of two other alleged allies of Zhou, Bo Xilai and Li Dongsheng, neither of them employed by PetroChina.  SAC ¶¶ 20–21, 32, 35.

4

- On March 18, 2013, Defendant Jiang was promoted to Director of the PRC's State-owned Assets Supervision and Administration Commission ("SASAC"); Unnamed "Chinese media reports" suggesting that this promotion was intended, by unspecified parties, to remove Jiang from PetroChina during the PRC's investigation. SAC ¶ 22.

- On August 27, 2013 the Company announced that SASAC was investigating three senior officials of PetroChina, including Defendants Li, Ran, and PetroChina chief geologist Wang Daofu, for unspecified "severe breaches of discipline"[3], and all three officials resigned their positions with the Company. SAC ¶ 27.

- Seven other then-current or former PetroChina employees were detained or "under investigation" by PRC authorities for unspecified reasons in connection with the "corruption investigation of PetroChina."[4] SAC ¶¶ 33, 36, 37, 42, 43.

- Two alleged "suppliers" of PetroChina were under "investigation by the PRC in connection with PetroChina" and the Chairman of one of the suppliers was "arrested by the PRC security authority 'over alleged bribery activity.'" SAC ¶¶ 29–31.

- According to unspecified "various Chinese and U.S. media reports," the investigation included unspecified "bribery, political corruption, and undisclosed related party transactions." SAC ¶ 23.

No further details are alleged to substantiate the timing or nature of any misconduct, who at PetroChina knew of any misconduct, when the misconduct became known to any Defendant, or that any alleged misconduct affected the Company or its financial statements in any way.

**The "Corrective Disclosures":** The SAC alleges that PetroChina's purported fraud first came to light as the result of PetroChina's August 27, 2013 announcement that three employees had resigned and were under investigation by the PRC. SAC ¶ 27. According to the SAC, this news caused the price of PetroChina's ADS to decline $3.92 from $111.74 on August 27, 2013 to $107.82 on August 28, 2013. SAC ¶ 28. Not mentioned in the SAC is that, within a week, the

---

[3] Contrary to Plaintiffs' allegations, the Company's announcement does not mention "severe breaches of discipline," SAC ¶ 27. *See* Ex. C (Aug. 27, 2013 announcement) (stating that one day earlier the Company had been informed by CNPC that the three individuals "are currently under investigation by relevant PRC authorities").

[4] Plaintiffs repeatedly mischaracterize the PRC action as a "corruption investigation into PetroChina," SAC ¶¶ 33, 36, *see also* SAC ¶¶ 13, 14, 23, 24, 39, 41, 44 ("corruption at PetroChina"), yet the only verifiable sources cited in the SAC clearly state it is an investigation into *individuals, only some of whom were once associated with PetroChina*—not any particular Company, *see* SAC ¶¶ 26, 27 (announcements by PRC Ministry and the Company).

Company's share price had rebounded to $111.08 on September 3, 2013, and closed as high as $114.51 a week after that on September 10, 2013. Ex. D (PetroChina's historical ADS prices).[5]

The SAC also alleges that PetroChina's ADS price fell after a December 17, 2013 Bloomberg report that Wen Qingshan, a PetroChina Supervisor and Deputy Chief Accountant, along with a General Manager from CNPC and the head of Chinaoil, was "taken into custody by PRC authorities in connection with the corruption investigation of PetroChina." SAC ¶ 33. Plaintiffs allege that this news caused PetroChina's ADS "to fall from $109.43 per share to $106.99 per share on December 17, 2013." SAC ¶ 34.[6] The SAC again omits the fact that, the day after the Bloomberg report, PetroChina's share price closed at $111.37. *Id.*; Ex. D.

In essence, the total decline of PetroChina's ADS price after the announcements relied on by Plaintiffs was of ***37 cents*** (0.3%), from **$111.74** on August 26, 2013 (the day before the first purported corrective disclosure) to **$111.37** on December 18, 2013 (the day after the final purported corrective disclosure), *see* SAC ¶¶ 28, 34; Ex. D, a change so small that it is impossible to attribute to any cause other than normal variation.

Plaintiffs purport to represent purchasers of PetroChina's ADS from April 26, 2012 through December 17, 2013 (the purported "Class Period"), and assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder. SAC ¶ 1.

## ARGUMENT

In deciding a motion to dismiss under Rule 12(b)(6), the Court must assume that well-pled factual allegations in the complaint are true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[5] Plaintiffs notably omit from the SAC facts about how PetroChina's ADS price reacted after other announcements. For example, PetroChina's ADS price *increased* from $108.80 on August 30, 2013 to $111.08 on September 3 (the next trading day) after "the PRC news media" allegedly reported a PetroChina supplier was under corruption investigation by the PRC in connection with PetroChina. SAC ¶ 27; Ex. D. Similarly, PetroChina's ADS price *increased* from $114.22 on April 11, 2014 to $114.48 on April 14 (the next trading day) after an unspecified report that a PetroChina General Manager was detained by PRC authorities. SAC ¶ 36; Ex. D.

[6] Plaintiffs mistakenly quote adjusted prices; the actual closing prices for December 16 and 17, 2014 are $111.76 and $109.27, respectively. *See* Ex. D.

555 (2007).  However, the Court need not credit conclusory or unsupported assertions, or factual allegations "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404, 405–06 (S.D.N.Y. 2001).

As the SAC purports to allege securities fraud, it must also meet the heightened pleading standards mandated by Federal Rule of Civil Procedure 9(b) and the PSLRA.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–21 (2007); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("private securities fraud actions must also meet the PSLRA's pleading requirements or face dismissal"); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005) (Rule 9(b) "is applied assiduously to securities fraud.  This Circuit's strict pleading requirements in securities-fraud cases . . . were (essentially) codified in the [PSLRA].") (citation omitted).  The SAC does not meet these stringent pleading requirements.

## I.      PLAINTIFFS' SECTION 10(B) CLAIM MUST BE DISMISSED

A cause of action under Section 10(b) and Rule 10b–5 must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  The complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1); *ATSI Commc'ns, Inc.*, 493 F.3d at 99.  A plaintiff must "set forth the who, what, when, where and how of the alleged fraud."  *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 614 (S.D.N.Y. 2008) (internal marks omitted), *aff'd*, 347 F. App'x 665 (2d Cir. 2009).

Here, Plaintiffs' claims are deficient because the SAC utterly fails to allege (A) fraudulent intent on the part of any of the Defendants; (B) a single false or misleading statement or material omission by Defendants; or (C) loss causation.

## A.     The SAC Does Not Plead Scienter

To plead a Section 10(b) claim, a plaintiff must show that defendants acted with scienter, "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 (internal marks omitted).  A plaintiff must "state with particularity facts giving rise to a strong inference that the defendants acted with [a fraudulent] state of mind."  15 U.S.C. § 78u-4(b)(2).

A plaintiff can establish the required "strong inference of scienter" by alleging particularized facts showing "either '(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness.'" *Capital Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 225 (2d Cir. 2012) (quoting *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)).  Here, Plaintiffs do not even attempt to allege that Defendants had motive and opportunity to commit fraud, and Plaintiffs' burden to show conscious misbehavior or recklessness is therefore "'correspondingly greater.'"  *ECA*, 553 F.3d at 199.[7]

### 1.     *Plaintiffs Fail To Plead Facts That Show Defendants Acted with Conscious Misbehavior or Recklessness*

To demonstrate that Defendants acted with conscious misbehavior or recklessness, Plaintiffs must demonstrate that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts

---

[7] *See also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (because the plaintiffs "failed to allege that [defendants] had a compelling motive to mislead investors . . . a number of competing [nonfraudulent] inferences regarding scienter arise"); *see also Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 297 (S.D.N.Y. 2010) ("[a] reckless disregard for the truth means conscious recklessness – *i.e.*, a state of mind *approximating actual intent and not merely a heightened form of negligence*") (emphasis in original) (internal marks omitted).

alleged." *Tellabs*, 551 U.S. at 324. In addition, Plaintiffs must allege with particularity the Defendants' knowledge of facts or access to information contradicting their public statements, *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000), amounting to "[a]n egregious refusal to see the obvious, or to investigate the doubtful." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) (internal marks omitted). Plaintiffs fall far short of satisfying these standards.

The SAC should be dismissed because Plaintiffs fail to allege with the requisite—or any—particularity that PetroChina knew or was consciously reckless in not knowing that its statements were allegedly false. Though Plaintiffs repeatedly allege that Defendants "knew or recklessly disregarded" that material facts were being misrepresented or omitted (*see, e.g.*, SAC ¶¶ 16, 55, 56, 68, 71), Plaintiffs never identify *any* information known by or available to the Defendants at the time of the alleged false statements. This failure is fatal to Plaintiffs' claims.

Indeed, the only allegations in the SAC related to scienter are boilerplate in the extreme: Plaintiffs allege merely that the Individual Defendants were "privy to confidential proprietary information concerning the Company and its business and operations," and, "[b]ecause of their senior positions, they knew the adverse non-public information about PetroChina's corporate governance violations and false financial statements." SAC ¶¶ 16, 78. But, "[c]ourts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook." *Teamsters Allied Benefit Funds v. McGraw*, 2010 WL 882883, at *11 (S.D.N.Y. Mar. 11, 2010) (internal marks omitted); *see also Police & Fire Ret. Sys. v. Safenet, Inc.*, 645 F. Supp. 2d 210, 234 (S.D.N.Y. 2009) ("Courts may not infer scienter 'solely from the fact that, due to the defendants' board membership or executive managerial position, they had access to the company's internal documentation as well

as any adverse information.'"). Moreover, Plaintiffs vaguely contend that Defendants had access to contrary facts, but fail to "specifically identify the reports or statements containing this information." *Novak*, 216 F.3d at 309. The SAC alleges no information that was available to the Defendants when the alleged false statements were made.

Plaintiffs' new but unsubstantiated allegation, based on a news article,[8] that the "corruption at PetroChina involved a bidding program at an Indonesian oilfield, wherein PetroChina bribed a related company $800 million in order [to] grow PetroChina's business in the region" (SAC ¶ 24) is not sufficient to support an inference of scienter – let alone the compelling inference required by *Tellabs*.[9] Plaintiffs do not allege that any Individual Defendant or other senior management at PetroChina was aware of this purported bribery.[10] They therefore fail to allege any "*specific* contradictory information" available to Individual Defendants that would have made them aware of the purported bribery, nor do Plaintiffs provide any basis to demonstrate that Individual Defendants had such information "*at the same time*" PetroChina filed its 2011 and 2012 Forms 20-F eighteen months and six months before the cited article, respectively. *City of Brockton Ret. Sys. v. Avon Products, Inc.*, 2014 WL 4832321, at *20 (S.D.N.Y. Sept. 29, 2014) (allegations fail to demonstrate scienter where "[c]omplaint does not allege that [individual defendants] participated in the allegedly corrupt 'dinner and karaoke' events. Instead, Plaintiffs argue that [individual defendants] should have been aware of these

---

[8] The vague "facts" in this alleged article should be given no more weight than the remainder of Plaintiffs' unsubstantiated allegations. *See In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) ("[N]ewspaper articles should be credited only to the extent that other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability. Conclusory allegations of wrongdoing are no more sufficient if they come from a newspaper article than from plaintiff's counsel.") (internal marks omitted); *Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d at 300 ("[T]he news articles cited still must indicate particularized facts about a defendant's conduct in order to support [the] claims.") (internal marks omitted).

[9] Notably, Plaintiffs do not allege that bribery disclosure had any effect on the price of PetroChina's ADS.

[10] Rather than create a compelling inference of fraud, this alleged bribery, by "[its] surreptitious nature," creates a "strong inference that the payments would have deliberately been kept secret—even within the company." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008) (purported "illegal payments made by . . . foreign sales agents operating in China, the Philippines, and Thailand . . . were not, by their nature, the type of transaction of which it would be 'hard to believe' senior officials were unaware").

events because of their supervisory positions.").[11]  In fact, Plaintiffs do not even allege that the

purported Indonesian bribery occurred *prior to* the alleged misstatements by the Company.

Plaintiffs' vague assertions of unidentified weak internal controls similarly do not plead a

strong inference of scienter.  "A failure 'to identify problems with the defendant-company's

internal controls and accounting practices does not constitute reckless conduct sufficient for §

10(b) liability.'"  *In re Magnum Hunter Res. Corp. Sec. Litig.*, —— F. Supp. 2d ——, 2014 WL

2840152, at *16 (S.D.N.Y. June 23, 2014) (quoting *Conseco Inc.*, 2011 WL 1198712, at *22).[12]

Plaintiffs' allegations regarding the existence of an investigation by the PRC do not

demonstrate scienter.  *See, e.g.*, *Burritt v. NutraCea*, 2010 WL 668806, at *7 (D. Ariz. Feb. 25,

2010) ("[T]he mere existence of an ongoing investigation does not show scienter."); *City of

Austin Police Ret. Sys. v. ITT Educ. Serv., Inc.*, 2005 WL 2278123, at *8–9 (S.D. Ind. Sept. 14,

2005) ("the mere existence of that investigation cannot support any inference of wrongdoing . . .

on the part of the company or its senior management").

Nor can Plaintiffs plead scienter based on Jiang's SOX Certification, because it is well

established that such a certification does not substitute for facts raising an inference of scienter.

*See, e.g.*, *City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 474 (S.D.N.Y. 2008)

(finding that SOX certification does not support a strong inference of scienter); *In re Bausch &

Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 341 (W.D.N.Y. 2008) (no inference of scienter when

complaint lacks "any particularized allegation" that SOX certifications "were not honestly and

---

[11] Similarly, by merely calling it "bribery" without explanation, Plaintiffs' lack of specificity about the purported transaction also fails to meet the particularity requirements of Rule 9(b) and the PSLRA.  *See Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 28 (2d Cir. 2013) (reaching the same conclusion, because "[w]hile the Plaintiffs allege that the statements were fraudulent because they were predicated on 'sham transactions,' the Plaintiffs do not state with particularity any facts about these transactions to support a conclusion that they were sham transactions").

[12] This is particularly true here, where there has been no restatement of the Company's financials and the Company's auditor, PricewaterhouseCoopers, issued an audit report on PetroChina's internal controls that Plaintiffs do not dispute or call into question.  *See* Ex. B at F-2 ("in our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2011").

reasonably believed to be true when made"); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp.

2d 247, 304–05 (S.D.N.Y. 2008) ("a [SOX] certification is probative of scienter only if the

complaint alleges specific contrary information, such as glaring accounting irregularities or other

red flags of which the certifying defendant had reason to know") (internal marks omitted).

## 2. *The SAC Does Not Plead Corporate Scienter*

Plaintiffs allege that PetroChina "is liable for the acts of the Individual Defendants and its

employees under the doctrine of respondeat superior and common law principles of agency

because all of the wrongful acts complained of herein were carried out within the scope of their

employment," and that "[t]he scienter of the Individual Defendants and other employees and

agents of the Company is similarly imputed to PetroChina under respondeat superior and agency

principles." SAC ¶¶ 17–18. These boilerplate allegations do not establish corporate scienter.

As the Second Circuit made clear in *Dynex*, a plaintiff pleads corporate scienter only

where "the pleaded facts . . . create a strong inference that *someone* whose intent could be

imputed to the corporation *acted with the requisite scienter*." *Dynex*, 531 F.3d at 195 (emphasis

added). The Court cited an example of such pleading from a Seventh Circuit opinion:

> Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

*Id.* at 195–96. It is apparent that Plaintiffs have not satisfied this standard. First, the SAC does

not allege any specific misrepresentation (*see infra* pp. 13–21), let alone such a significant and

obvious misrepresentation that the only plausible explanation could be that corporate officials

must have acted with scienter. The sole allegation of any conduct whatsoever in the SAC – an

alleged "bidding program at an Indonesian oilfield, wherein PetroChina bribed a related

company $800 million in order grow PetroChina's business in the region" (SAC ¶ 24) – contains

no facts suggesting that the Individual Defendants or "*someone* whose intent could be imputed to the corporation," *Dynex*, 531 F.3d at 195 (emphasis added), acted with fraudulent intent. Indeed, far from the Seventh Circuit's "dramatic" hypothetical announcement completely contradicted by fact, Plaintiffs have not alleged any announcements related to the purported bidding program, nor have they alleged how an $800 million payment would have affected PetroChina's finances or operations, if at all. This allegation therefore does not support an inference of corporate scienter.

The remainder of the SAC, which alleges conduct such as "political corruption, and undisclosed related party transactions" (SAC ¶ 23), cannot establish corporate scienter against PetroChina because knowledge of employees cannot be imputed to a company when the employee's actions are adverse to the company and solely for the individual's own self interest. *In re JPMorgan Chase & Co. Sec. Litig.*, MDL No. 1783, 2007 WL 4531794, at *9 (N.D. Ill. Dec. 18, 2007) (allegation that CEO caused company to pay 14% premium in merger to retain his position "clearly did not benefit the company. In fact, the allegations suggest that [the CEO] enriched himself at the expense of the corporate entity"); *In re ChinaCast Educ. Corp. Sec. Litig.*, 2012 WL 6136746, at *10 (C.D. Cal. Dec. 7, 2012) (no corporate scienter where "there is no allegation that [the CEO] or his accomplices acted out of anything other than their own self-interest, or that their conduct in any way benefitted ChinaCast"). Here Plaintiffs' allegations of "improper self-dealing in state owned enterprises," "political corruption, and undisclosed related party transactions" insinuate that China's "former security czar . . . and his associates" diverted assets from various enterprises for their own personal benefit. SAC ¶¶ 19, 20, 23. If true, these actions "clearly did not benefit the company," and therefore cannot be imputed to PetroChina.

**B.    The SAC Does Not Plead a False Statement or Actionable Omission**

"In order to satisfy the requirements of Rule 9(b), [P]laintiffs must allege in what respects the statements at issue were false." *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996). To do this, Plaintiffs must "specify the statements that the plaintiff contends were fraudulent and explain why the statements were fraudulent." *Boca Raton Firefighters and Police Pension Fund v. Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012) (citation omitted). Moreover, the PSLRA mandates that securities fraud complaints "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1)(B).

Despite Plaintiffs' recent amendments to their complaint, which were ostensibly aimed at adding specificity to satisfy Rule 9(b), the SAC still fails to comply with these clear and well-settled rules. Indeed, in response to PetroChina's prior motion to dismiss, which identified the utter lack of any specificity whatsoever, Plaintiffs have added only one solitary allegation in the press regarding a single act of bribery at PetroChina. SAC ¶ 24. But, Plaintiffs have not identified (1) when this alleged bribery occurred, (2) who was involved in the bribery, or (3) how, if at all, the alleged bribery affected any of the statements made in PetroChina's Forms 20-F for 2011 and 2012. Absent this required level of specificity, this new allegation adds nothing.

Thus, the SAC remains devoid of any *facts* – particularized or not – supporting Plaintiffs' bald assertions that Defendants lied about (a) the existence of fraud at PetroChina, (b) PetroChina's financial statements or its internal and financial controls, or (c) their compliance with corporate governance directives or PetroChina's Code Of Ethics. Plaintiffs similarly fail to

allege any actionable omission of material fact because the SAC does not demonstrate that

Defendants owed any duty to disclose the alleged uncharged and unadjudicated wrongdoing.[13]

1. ***Plaintiffs Fail To Allege That Any of PetroChina's Class Period Statements Were False Or Misleading When Made***

a. **The SAC Does Not Allege Facts Showing that the SOX Certification Was False or Misleading**

Plaintiffs appear to allege two different theories of securities fraud regarding Jiang's SOX

Certification accompanying the 2011 20-F:  (1) that the SOX Certification was false and

misleading where Jiang certified that, based on his knowledge, the 2011 20-F was accurate, and

(2) that the SOX Certification was false and misleading because Jiang knew of material internal

control weaknesses at PetroChina.  SAC ¶¶ 5, 56.

As an initial matter, Plaintiffs' allegations regarding Jiang's SOX Certification lack any

particularized facts indicating the certification was false.  *See San Leandro*, 75 F.3d at 812–13;

*In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 371 (E.D.N.Y. 2013) ("SOX certifications cannot

constitute a misstatement or omissions for purposes of 10b-5 liability" where "[p]laintiff has not

alleged any facts pertaining to the [c]ompany's internal structure for financial reporting, much

less that [the company] lacked adequate internal controls" and "does not even challenge the

[d]efendants' accounting in any of the SEC filings.") (internal marks omitted); *In re Bank of Am.*

*AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 583 n.4 (S.D.N.Y. 2013) (rejecting claim SOX

---

[13] Even if Plaintiffs alleged an actionable misrepresentation or omission, the purported fraud was clearly immaterial *as a matter of law*.  "[T]he question of materiality may be decided as a matter of law on a motion to dismiss if the alleged omission is so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of its importance."  *In re Allied Capital Corp. Sec. Litig.*, 2003 WL 1964184, at *5 (S.D.N.Y. Apr. 25, 2003) (Lynch, J.) (internal marks omitted).  Here, the price of PetroChina's ADS fell only ***3.5%*** from $111.74 to $107.82 after the alleged corrective disclosure on August 27, 2013 (*see* SAC ¶¶ 27–28) before rebounding to $111.08 on September 3, 2013 and closing as high as $114.51 a week later on September 10, 2013. The price drop on December 17, 2013 was followed by an increase the next day, *see* Ex. D.  "[F]leeting dip[s] in [PetroChina's] share price thus [do] not provide a plausible basis on which a reasonable jury could conclude that investors actually considered the alleged overstatements material."  *Allied Capital*, 2003 WL 1964184, at *6 (information immaterial where share price fell 10% after disclosure, followed by a recovery in the price over the following four days).

certifications were false or misleading as plaintiffs failed to allege that the company's financial statements contained untrue statements or material omissions).[14]

Even if Plaintiffs had alleged bribery with particularity, Plaintiffs do not allege any facts suggesting Jiang knew of such bribery or any other facts contradicting his Certification.[15] Jiang certified that he had "disclosed, based on our most recent evaluation of internal control over financial reporting, . . . [a]ny fraud, whether or not material . . . ." Ex. B at Exhibit 12.1. Yet, Plaintiffs do not allege any particularized facts illustrating that the actions and processes articulated in Jiang's Certification were not undertaken, nor any facts regarding any fraud that existed at PetroChina (let alone that Jiang knew of any such fraud). Thus, Plaintiffs' allegation that Jiang's Certification was false because PetroChina's senior management was aware of fraud does not support a claim. *See Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *22 & n.60 (S.D.N.Y. Sept. 19, 2011) (claims based on SOX certifications dismissed where "plaintiffs [did] not allege[] any facts pertaining to the Company's internal structure for financial reporting, much less that [the Company] lacked adequate internal controls," and "plaintiffs d[id] not actually challenge defendants' accounting").

In any event, Plaintiffs fail to allege that the single act of bribery affected PetroChina's financial statements or internal controls, which is the only issue addressed by the Certification. *See Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 858 (N.D. Ill. 2009) (certifiers under SOX are required to disclose only frauds that "directly relate to' the preparation of financial statements") (quoting S.E.C. Release No. 34-47986). Jiang's Certification states:

---

[14] In fact, as noted, *supra* n.11, Plaintiffs take no issue with the unqualified audit opinions by PetroChina's auditor that the Company maintained "effective internal control over financial reporting." Ex. B at F-2; Ex. A at F-2.

[15] To the extent Plaintiffs allege that Jiang's Certification of PetroChina's internal controls were false because he or other PetroChina employees were acting contrary to those controls, "this allegation is of mismanagement, which is not actionable under federal law . . . , because Plaintiff may not bootstrap his internal mismanagement claim into a federal securities action by alleging the disclosure philosophy of the statute obligates Defendants to reveal their managerial deficiencies." *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 683–84 & n.9 (D. Colo. 2007) (quoting *Panter v. Marshall Field & Co.*, 646 F.2d 271, 288 (7th Cir. 1981)).

The Company's other certifying officer and I have disclosed, *based on our most recent evaluation of internal control over financial reporting*, to *the registrant's auditors and the audit committee of registrant's board of directors* . . .

(a) All significant deficiencies and material weaknesses in the design or operation of internal control *over financial reporting* which are reasonably likely to *adversely affect the Company's ability to record, process, summarize and report financial information*;

(b) Any fraud, whether or not material, that involves management or other employees *who have a significant role in the registrant's internal control over financial reporting*.

SAC ¶ 54 (emphasis added). Plaintiffs fail to allege how the purported non-disclosure of bribery, "corruption," or the vague disciplinary breaches referenced in the SAC "directly relate to" the preparation of financial statements, and therefore the SOX Certification is not actionable. *See In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 363 (S.D.N.Y. 2008) (dismissing claims predicated on SOX certifications because "[p]laintiffs . . . neglected to answer defendants' argument that the [SOX] certifications' 'any fraud' language did not require the individual defendants to disclose the alleged inside trading scheme").

> **b.** **The SAC Does Not Allege Facts Showing That PetroChina's Financial Statements Were False or Misleading or that PetroChina Lacked Adequate Internal and Financial Controls**

Plaintiffs allege PetroChina's "financial statements" were false and misleading because "they contained direct references to the Company's Code of Ethics and statements regarding its compliance with applicable laws, regulations and internal governance policies." SAC ¶¶ 5, 56.

But the SAC does not identify *any specific item* of PetroChina's financial statements that is inaccurate or false. *See Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *13 (S.D.N.Y. Sept. 30, 2004) ("plaintiffs must provide at the very least some level of detail about the improper accounting alleged to underlie misleading statements, and their materiality, in order to survive the motion to dismiss"); *In re MSC Indus. Direct Co., Inc.*, 283 F. Supp. 2d 838, 846 (E.D.N.Y.

2003) ("[t]he [] complaint does not explain how the defendants' use of reserve manipulation caused earnings figures that were materially inflated for fiscal years 1999, 2000, 2001"). Nor do Plaintiffs identify a single "internal [or] financial" control that they claim was deficient. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115–16 (2d Cir. 1982) (finding inadequate the allegation that defendant lacked "adequate operational, managerial and financial controls").

The SAC instead relies on the bare conclusory allegation that Defendants made "false and/or misleading" statements, (SAC ¶¶ 5, 56) but "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). In essence, "Plaintiff[s'] allegations of lack of controls are conclusory assertions without any factual support, and they cannot survive this motion to dismiss." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d at 371 (internal marks omitted); *see also Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012) ("Plaintiffs have failed to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why.").

> ### c. The SAC Does Not Allege Facts Showing That Defendants Misrepresented Compliance with Laws and Regulations, Corporate Governance Directives, and PetroChina's Code Of Ethics

Plaintiffs quote long passages from PetroChina's 20-Fs and Jiang's 2011 SOX Certification (SAC ¶¶ 47–54), and then baldly state that each contained false statements because "senior officials were in non-compliance with the applicable laws and regulations and the Company's corporate governance directives and code of ethics." *Id.* ¶ 56. But Plaintiffs fail to plead any specific misrepresentations concerning Defendants' compliance with any applicable "laws and regulations," corporate governance "directives," or the Code of Ethics.

As an initial matter, Plaintiffs have not alleged any actual *representations* – false or otherwise – in the 20-Fs or Jiang's SOX Certification regarding Defendants' compliance with "laws and regulations," "corporate governance measures," or Code of Ethics. Defendants, in fact, made no such representations. Item 16G of the 20-Fs, "Corporate Governance," discusses the Code of Ethics. Ex. B at 99–101; Ex. A at 100–02. The Code states that PetroChina is "incorporated under the laws of the [PRC]," and "summarizes the significant differences between our corporate governance practices and those that would apply to a U.S. domestic issuer under the NYSE corporate governance rules," including the following significant differences:

> Under the NYSE corporate governance rule 303A.04, a listed company must have a nominating/corporate governance committee composed entirely of independent directors . . . . *We are not required under the PRC Company Law and the HKSE Listing Rules to have, and we do not currently have, a nominating/corporate governance committee. . . .*
>
> Under the NYSE corporate governance rule 303A.09, a listed company must adopt and disclose corporate governance guidelines that cover certain minimum specified subjects. *We are not required under the PRC Company Law and the HKSE Listing Rules to have, and we do not currently have, formal corporate governance guidelines. . . .*
>
> Under the NYSE corporate governance rule 303A.12(a), each listed company CEO must certify to the NYSE each year that he or she is not aware of any violation by the company of NYSE corporate governance listing standards. *Our CEO is not required under the PRC Company Law and the HKSE Listing Rules to submit, and our CEO does not currently submit, such certification.*

*Id.* (emphases added). Thus, far from representing compliance with corporate governance "directives," Defendants told investors that (1) PetroChina does not have a corporate governance committee or policy, and (2) PetroChina's CEO did *not* certify that he was unaware of any violation by the company of NYSE corporate governance listing standards. Thus, Plaintiffs cannot show that Defendants lied about compliance with corporate governance directives.[16] *See*

---

[16] In light of these clear disclosures in the Company's Form 20-F, Plaintiffs' allegations in the SAC that the Company's website "touted" the Company's "compliance with applicable law and corporate governance rules and

*Bennett*, 680 F.3d at 230 (plaintiffs fail to allege Section 10(b) fraud where, rather "than simply remaining silent as to whether it was complying with U.S. law, [defendant] represented that it was not a U.S.-regulated company").

Statements in 20-Fs that PetroChina "adopted [the Code of Ethics] and have disclosed the content of this code on our website" do not represent that Defendants were complying with any specific policy. Rather, PetroChina merely refers to its existence and nothing else. Ex. B at 101; Ex. A at 98–99. To the extent Plaintiffs claim Annual Reports were misleading because they assured investors Defendants were complying with the Code of Ethics, that claim also fails.[17]

In any event, courts have uniformly rejected securities fraud claims based on non-compliance with codes of ethics or corporate governance policies. Judge Gardephe recently dismissed as immaterial puffery very similar claims involving Avon's corporate code of ethics which stated that Avon employees were "responsible for complying with all laws and regulations that apply to his or her work" and further prohibited violations of the Foreign Corrupt Practices Act. *Avon Products*, 2014 WL 4832321 at *13–14. Judge Gardephe rejected these types of generalized statements as supporting a claim for securities fraud:

> Here, a reasonable investor would not rely on the statements discussed above as a guarantee that Avon would, in fact, maintain a heightened standard of legal and ethical compliance. The aforementioned statements from the Ethics Codes and the Corporate Responsibility Reports offer no assurance that Avon's compliance efforts will be successful, and do not suggest that Avon's compliance systems

---

regulations" (SAC ¶ 52) are unavailing. These statements are, at best, inactionable puffery. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *31, *36 (S.D.N.Y. Sept. 28, 2012) (general statements "concerning [company's] compliance with legal and ethical standards" were mere puffery where defendant did not "assert[ ] that its financial success was attributable to its adherence to laws or to a particular advantage it had over its peer institutions"), aff'd sub nom. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). In any event, Plaintiffs fail to identify any particular conduct by Defendants contrary to any particular regulation, nor do they adequately plead why this website content constitutes an actionable statement made during the Class Period.

[17] Plaintiffs do not allege that PetroChina's Code of Ethics itself contained false or misleading statements. Were they to do so, such a claim would be untenable because the Code of Ethics was published on March 23, 2004, years before the Class Period. *See* SAC ¶ 50; Ex. B at 101. It is well settled that statements made before the class period cannot form the basis for securities fraud claims. *See, e.g., In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) ("A defendant . . . is liable only for those statements made during the class period.").

give the Company a competitive advantage over other companies.  Instead, these statements merely set forth standards in generalized terms that Avon hoped its employees would adhere to.  Such statements are not material.

Id. at *16 (citation omitted).  Similarly, in *City of Roseville Emps.' Ret. Sys. v. Horizon Line, Inc.*, 686 F. Supp 2d 404, 409 (D. Del. 2009), plaintiffs contended that defendant's code of ethics was materially misleading because it led shareholders to believe that the company was complying with federal laws when, in reality, the company was allegedly violating federal law.  The court rejected the plaintiffs' argument that the defendants had a duty to disclose violations of their code of ethics, and that their failure to do so rendered the Code itself misleading:

> SEC regulations require a company either to (1) adopt and make publicly available a code of ethics "that applies to the registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions," or (2) explain its reasons for failing to do so. Were we to accept plaintiffs' position, any company with a code of ethics in compliance with § 229.406 would be required to disclose all violations of that code or face liability under federal securities law. Such a result is untenable.

*Horizon Line*, 686 F. Supp. 2d at 415 (citation omitted).

Thus, even if Defendants represented to investors that PetroChina's employees were complying with the Code of Ethics – which they did not – Plaintiffs could not viably allege securities fraud on that basis.  *See, e.g.*, *Desai*, 654 F. Supp. 2d at 858–59 (finding publication of code of ethics on company's website did not imply its officers and directors were in compliance with the code); *Andropolis*, 505 F. Supp. 2d at 685–86 ("[a] company's essentially mandatory adoption of a code of ethics simply does not imply that all of its directors and officers are following [it]," noting that "all public companies—whether run by crooks or angels—will adopt just such a code").  *Cf. ECA*, 553 F.3d at 205–06 (statements regarding "highly disciplined" risk management and standard-setting reputation for integrity "did not, and could not, amount to a guarantee that its choices would prevent failures in its risk management practices").

Moreover, while Plaintiffs claim that PetroChina's "senior officials were not in compliance with the applicable laws and regulations and the Company's corporate governance directives and code of ethics," the SAC wholly lacks factual detail to substantiate this conclusory allegation. Indeed, Plaintiffs nowhere in the SAC plead *any conduct* by anyone at PetroChina, much less conduct that violated any corporate governance directive or any provision of the Code of Ethics. Plaintiffs allege only that: (1) four PetroChina officials were under investigation by the PRC and left their positions at PetroChina, (2) other PetroChina officials were detained by the PRC, and (3) two PetroChina suppliers were "under corruption investigation by the PRC in connection with PetroChina." These allegations do not provide any factual detail whatsoever regarding who allegedly violated PetroChina's Code of Ethics, how they did so, or when they did so. Accordingly, Plaintiffs have not met their burden under Rule 9(b) or the PSLRA to "explain why [Defendants'] statements were fraudulent." *Bahash*, 506 F. App'x at 36 (internal mark omitted); *see also* 15 U.S.C. § 78u-4(b) ("the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading").

### 2. *Plaintiffs Have Not Pleaded an Actionable Misrepresentation or Omission of Material Fact*

A party charged with failing to disclose material information must be under a duty to disclose it in order to be held liable under Section 10(b). *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). A duty to disclose generally arises only by virtue of a statute or regulation mandating the specific disclosure or, under Rule 10b-5, if such disclosure is "necessary in order to make [other] statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b); *see First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir. 1977); *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992).

"A corporation does not have a duty to disclose information simply because it is

material." *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d at 353. *See Glazer*, 964 F.2d at 156 ("Even if information is material, there is no liability under Rule 10b–5 unless there is a duty to disclose it."). Instead, "[a] duty to disclose arises whenever secret information renders prior public statements materially misleading." *San Leandro*, 75 F.3d at 810.

Plaintiffs claim that Defendants had a duty to disclose that PetroChina's "senior officials were in non-compliance with the applicable law and regulations and the Company's corporate governance directives and code of ethics," and that PetroChina "was subject to investigation and disciplinary action by various governmental and regulatory authorities." SAC ¶ 56. This claim lacks merit for three reasons.

*First*, there is no duty to disclose facts unknown at the time of the alleged misstatements. Plaintiffs do not allege that Defendants knew about any investigation or disciplinary action at the time Defendants made the alleged misstatements in the 20-Fs and SOX Certification, nor does the SAC even allege that they even *existed* at the time. Under these circumstances, Plaintiffs have not alleged a duty to disclose. *See San Leandro*, 75 F.3d at 812 (finding no duty to disclose where "plaintiffs allege[d] no facts supporting their assertion that defendants had knowledge of the 8.3 percent decline before April, and it is not clear that the decline rate even reached a level of 8.3 percent until the month of April."); *Acito v. Imcera Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("defendants' lack of clairvoyance simply does not constitute securities fraud").[18]

*Second*, even if the SAC alleged that Defendants or anyone else at PetroChina engaged in illegal behavior, "[a] corporation does not have a duty to disclose information simply because it is material or because it suggests that the corporation or its employees engaged in uncharged

---

[18] *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (holding that failure to anticipate future events did not constitute securities fraud); *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) ("If the complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed.") (emphasis in original).

illegal conduct." *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d at 353 (citation omitted).[19]

*Third,* even if Plaintiffs pled Defendants engaged in illegal conduct and knew of related investigations, federal securities laws impose no duty to speculate about the results of regulatory investigations or exposure to future litigation. *See Acito*, 47 F.3d at 52–53 (company was not obligated to predict that results of regulatory inspection would be negative); *Ballan v. Wilfred Am. Educ. Corp.*, 720 F. Supp. 241, 248 (E.D.N.Y. 1989) (defendant not required to disclose the "likely" results of pending investigations into whether it had violated government regulations). Even if Plaintiffs pled that Defendants knew of an investigation, Defendants still had no duty to disclose the investigation or predict results (even if those results were likely to be material).

## C.   The SAC's Allegations of Loss Causation Are Flawed

Section 10(b) claims require loss causation:  "plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate [the Exchange Act] caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).  Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."  *Lentell*, 396 F.3d at 172 (internal marks omitted).  An alleged corrective disclosure must "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint."  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010). Plaintiffs do not allege loss causation with respect to any alleged misrepresentation or omission.

*First,* Plaintiffs' loss causation theory is flawed in that it relies solely on two purported corrective disclosures *after* the bulk of the class-period decline from $148.47 on April 26, 2012 (the start of the Class Period) to $109.27 on December 17, 2013 (the last day of the Class Period)

---

[19] *See also Axis Capital*, 456 F. Supp. 2d at 585 ("If the complaint fails to allege facts which would establish such an illegal scheme, then the securities law claims premised on the nondisclosure of the alleged scheme are fatally flawed."); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 632 (S.D.N.Y. 2005) (plaintiffs' claim that defendants failed to disclose an illegal kickback scheme lacked sufficient particularity as it provided "no particular factual allegations that support the conclusory assertion that these investment opportunities were provided as 'kickbacks,' let alone that these opportunities were offered with fraudulent intent").

– a total Class Period decline of $39.20.  SAC ¶ 1; Ex. D at 1, 10.  On August 26, 2013, the last

trading day *prior* to the first alleged purported corrective disclosure, the ADS closed at $111.74,

representing a drop of $36.73, meaning that over ***93%*** of the total Class Period decline occurred

*before* Plaintiffs allege fraud was first revealed.  Obviously, allegedly concealed information

"could not have caused a decrease in the value of [the ADS] before the concealment was made

public."  *Lentell*, 396 F.3d at 175 n.4; s*ee also In re Manulife Fin. Corp. Sec. Litig.*, 2012 WL

4108104, at *7 (S.D.N.Y. Sept. 19, 2012) ("Despite [] grand allegations regarding Manulife's

tumbling stock price, the fact remains that over 75% of the total decline in price occurred before

any of the so-called corrective disclosures were issued.").  Plaintiffs' "complaint does not even

refer to . . . the gradual loss of the [ADS's] value, much less attempt to explain it as related to

loss causation."  *60223 Trust v. Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 461 (S.D.N.Y.

2007).  At a minimum, no damages exist for such pre-disclosure declines.

    *Second*, Plaintiffs do not account for the fact that declines in ADS price after disclosures

were more likely reactions to truly new information, *i.e.*, the loss of high level officials.  *See*,

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 229 (S.D.N.Y. 2009) ("The

all-but-inevitable decline in the price . . . following the company's announcement that the FDA

had not approved the [drug] application . . . was caused by the agency's failure to approve the

drug–not by any 'corrective' disclosure of some prior untruth.").  Plaintiffs do not apportion the

effect of this new information on PetroChina's ADS price.  *See*, *Lattanzio v. Deloitte & Touche*

*LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (loss causation not pled absent facts permitting

"factfinder to ascribe some rough proportion of the whole loss to" defendant's statements).  Price

increases after similar reports suggest a lack of causation.  *See* n.5 *supra*.[20]

---

[20] *Acticon AG v. China North East Petroleum Holdings, Ltd.*, 692 F.3d 34 (2d Cir. 2012), which Plaintiffs
cited in their pre-motion letter dated January 22, 2015 does not affect Plaintiffs' failure to plead loss causation.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the SAC with prejudice.[21]


Dated:  New York, New York          Respectfully submitted,
       February 13, 2015

                                   SIDLEY AUSTIN LLP

                                   By:  */s/ Tom A. Paskowitz*
                                     A. Robert Pietrzak (rpietrzak@sidley.com)
                                     Joel M. Mitnick (jmitnick@sidley.com)
                                     Tom A. Paskowitz (tpaskowitz@sidley.com)
                                     Benjamin F. Burry (bburry@sidley.com)
                                     787 Seventh Avenue
                                     New York, New York 10019
                                     Telephone:  (212) 839-5300

                                   *Attorneys for Defendant*
                                   *PetroChina Company Limited*

---

There, the Second Circuit merely held that the recovery of the share price during the 90-day "bounce-back" period provided for in the PSLRA does not preclude a plaintiff from alleging *economic* loss.

   [21] *See* Transcript of Oct. 23, 2014 pre-motion hearing, Dkt. # 34 at 10:15–19. ("I would be inclined to grant [Plaintiffs] leave to file the [second] amended complaint and then we would move directly into a motion to dismiss on the understanding that it will be with prejudice. OK?"  MR. KIM: "Understood, your Honor.").